IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ARKADA ENTERPRISES, INC., an Illinois Corporation,<br><br>    Arkada,<br><br>v.<br><br>DMK EXPRESS, INC., an Illinois Corporation,<br><br>    Defendant. | Case No.: 1:19-cv-02623<br><br>Judge: Honorable Sara L. Ellis |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN FINANCIAL DOCUMENTS**

Now Comes the Defendant, DMK Express, Inc. ("DMK") by its attorneys, ORLEANS CANTY NOVY, LLC, as for its Response in Opposition to Plaintiff's Motion to Compel Production of Certain Financial Documents, states as follows:

**I.      PRELIMINARY STATEMENT**

Far from being necessary, narrowly-tailored, and/or reasonably calculated to lead to the discovery of admissible evidence, the request at issue here seeks the further production of load payment records which (a) have already been produced in compliance with Plaintiff's request; and (b) the production of which would be unduly burdensome to the Defendant. Ordering production of supporting financial documents by this Court would place great financial strain upon the Defendant, and require Defendant to produce documents beyond the scope of the issues raised in Plaintiff's Complaint. Additionally, allowing Plaintiff to revive its subpoena requests in order to obtain the sought-after documentation would allow Plaintiff to circumvent the discovery process and conduct a phishing expedition in an attempt to bolster its ill-contrived claims while

1

simultaneously interfering with Defendant's business relationships. Accordingly, Defendant respectfully requests that both the Plaintiff's Motion to Compel and its request to revive subpoenas for records be denied.

## II. BACKGROUND

Plaintiff is an independent contractor driver of a tractor-trailer who provides transportation for loads of cargo throughout the contiguous United States of America. In short, Plaintiff owns or leases his power unit (semi-truck) which he then "leases out" to motor carriers with Department of Transportation ("DOT") authority who, in turn, pair Plaintiff with loads of cargo that need transporting throughout the United States of America. Defendant, *inter alia*, is a motor carrier with DOT authority. The specifics of the relationship between two such entities are typically outlined in an Independent Contractor agreement.

Plaintiff and Defendant entered into one such agreement. Under the terms of the Contractor Operating Agreement entered into by the parties, Defendant was to pay Plaintiff 80% of the line-haul revenue in addition to 80% of the fuel surcharge received per load transported by Plaintiff. (*See* Appendix A "Contractor Compensation" of the DMK Express, Inc. Independent Contractor Equipment Lease Agreement attached hereto as **Exhibit 1**). Line-haul revenue is the basic transportation charge per load, excluding any additional accessorial or fuel charges. Fuel surcharges are those charges added to the basic transportation charge which covers the cost of fuel. By way of example, a shipment of Widgets from Chicago, Illinois to Milwaukee, Wisconsin may have a line-haul revenue of $800.00 and a fuel surcharge of $200.00 (a total value of $1,000.00). Under the terms agreed to by the parties, Plaintiff could expect to earn $800.00 for the successful transportation of the load of Widgets (80% of the total value of the combined line-haul and fuel surcharge).

In the immediate suit, Plaintiff alleges that Defendant did not pay Plaintiff the correct amount pursuant to their agreement. Simply put, Plaintiff alleges that Defendant "skimmed" compensation from each load. To this end, Plaintiff issued interrogatories and requests to produce documents upon the Defendant. Defendant complied with the discovery requests by answering Plaintiff's interrogatories, providing the requested documentation, and objecting to certain requests where appropriate. At issue in the immediate Motion is Plaintiff's request to Defendant that it produce all records of payment which it received from the freight brokers for which it received orders to transport freight, including J.B. Hunt Transport, Fed Ex Corporation, Hub Group, Inc., Swift Intermodal Transportation, and Logistics Insight Corporation for any and all loads of cargo which were transported by Plaintiff under the dispatch of Defendant between June 2017 and August 2018. (*See* Doc. #32-3, pg. 1, ¶ 3).

### III.  ARGUMENT

Pursuant to the Court's Mandatory Initial Discovery Pilot Program, Defendant produced payment records of every load transported by Plaintiff under the dispatch of Defendant. Included in that initial production were "Order Detail Sheets" which outlined the total compensation (line-haul revenue plus fuel surcharges) for each load transported by Plaintiff under Defendant's authority between June 2017 and August 2018. Also included in the initial production were the corresponding payment records from Defendant to Plaintiff for said loads. These materials were produced pursuant to Confidential Protective Order. With this information combined, Plaintiff and Plaintiff's counsel could ascertain that load #127429, for example, was valued at $1,415.04; that upon successful delivery of the load, Plaintiff was to be compensated $1,132.03; and that the payment records for the corresponding load indicated that he was in fact compensated accordingly (*See* Defendant's MIDP Production Documents 0476 and 0474 which denote that

Plaintiff was compensated $929.28 for the line-haul and $202.75 for the fuel surcharge for a total of $1,132.03, which is 80% of $1,415.04 originally indicated on the Order Detail Sheet).

The aforementioned is merely one example of the nearly 300 loads that Plaintiff delivered under Defendant's authority and for which Defendant has already produced responsive documentation. Accordingly, Defendant has produced records which are responsive to Plaintiff's request. As such, Defendant has satisfied the request, and therefore, no further production of materials is necessary. As such, Plaintiff's Motion to Compel is moot and must be denied. (To the extent the Court wishes to examine to MIDP Production of Defendant to ensure compliance, the Defendant welcomes an in-camera review in order to maintain the integrity of the confidentiality agreement entered into between the parties.)

Despite the fact that Defendant has already complied with Plaintiff's request, Plaintiff continues to assert that it is entitled to further production of Defendant's payment records. In short, Plaintiff now seeks the production of all payment ledgers regarding the five aforementioned freight brokers from which Defendant received loads. However, production of those documents would be duplicative in nature. Indeed, the Federal Rules of Civil Procedure provide that "a Court may limit discovery where the discovery sought is. . . duplicative. . . ." Fed. R. Civ. P. 26(b)(2)(C)(i). Because Defendant has already produced documents which detail the compensation that Plaintiff received, it should not be caused to search for and reproduce the same material again.

In addition to being duplicative, the request is also overly burdensome. Indeed, causing the Defendant, a privately-owned, small business, to search its off-site paper-records storage facility during the busiest portion of a transportation entity's fiscal year (quarter four), creates an unnecessary hardship on a Defendant with limited resources (financially and personnel-wise) to

devote to said search. In support of its undue burden argument, Defendant has attached an Affidavit outlining the many reasons why further production is not only unnecessary, but cumbersome. (*See* Declaration of Margaret Kryzwiec, Vice President of DMK Express, Inc., attached hereto as **Exhibit 2**). In lieu of regurgitating Defendant's Declaration here, we direct the Court's attention to fact that the requested materials are no longer in the Defendant's easily accessible control. Rather, the additional materials, such as copies of screenshots showing the completion of delivery and payment from the broker to Defendant, may be found in an off-site facility. However, causing the Defendant to search said facility for potentially relevant documents (after it has already properly complied with the request) would take months given that there is only one employee capable of performing such a search. Further, the search would cost that employee precious time, money, and energy; all of which should be devoted to serving the business, not complying with baseless searches predicated upon Plaintiff's unfounded belief that Defendant skimmed the Plaintiff. Accordingly, Plaintiff's Motion to Compel should be denied.

     Finally, to the extent the Court considers denying Plaintiff's Motion to Compel, but allows Plaintiff to seek the requested documents through the issuance of subpoenas directed at the five aforementioned freight brokers, this request, too, must be denied because the payment documents have already been produced and Plaintiff is attempting to interfere with Defendant's business relationships as a means to extort Defendant into compliance, phish for further claims, and/or squeeze Defendant into early resolution without merit.

     A party to litigation can move to quash a subpoena issued to a Third-Party if "the subpoena infringes upon the movant's legitimate interests." *Laying v. Pansier (In re Pansier)*, 2019 Bankr. LEXIS 911 at 5 (E.D. Wis. 2019) (internal citation omitted). The Courts recognize a party's legitimate interests as including "interference with business relationships, or production

5

of private information about the party that may be in the possession of a third party." *Id*. A "minimal privacy interest" provides a party with standing to object to a subpoena issued to a Third-Party." *Malibu Media, LLC v. Doe*, 287 F.R.D. 513, 516 (N.D. Ind. 2012). Certainly, Plaintiff's previously-quashed records subpoenas to Defendant's clients are a business interference, which Defendant has a legitimate interest in safeguarding. Thus, Defendant has standing to object to the further issuance of said subpoenas.

Indeed, under the Federal Rules "a Court may limit discovery where the information sought can be obtained from some other source that is more convenient, less burdensome, or less expensive…." *Id*. at 7 (citing Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 26(b)(2)(C)). Further, the rules provide that a Court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Here, Defendant has made the documents evidencing the price of each load and payment reconciliation sheets available for review through its MIDP disclosures. However, should the Court grant Plaintiff's request to re-issue subpoenas, Plaintiff would again seek to disrupt Defendant's relationship with its clients through directing subpoenas for an array of improper, oppressive, and unduly burdensome requests.

Specifically, the requests for documents and materials which Plaintiff previously issued intrusively asked for "all…documents…issued or received in regard to the loads brokered to DMK"; "all…rate confirmations, shipping instructions, invoices, cargo manifests, shipping details…"; "…manuals, guidebooks, rules and regulations…regarding filling out or recording information from bills of lading"; "all communications…between you and DMK regarding loads brokered to DMK"; "all documents…referencing any payments made to or received from DMK,

including but not limited to client ledgers, invoices, bills and/or cancelled checks"; and "all…correspondence showing, confirming, denying…referencing any payments made to or received from DMK." Accordingly, the material sought would bear on an array of other material which contains sensitive contractual, business, rate and pricing information between Defendant and its customers. Given that Plaintiff already has the information it seeks regarding proper payment, the re-issuance of subpoenas seeking "payment documents" is merely a guise to disrupt Defendant's relationship with its customers, from which (on a competitive basis) it receives loads and revenue to operate its business and to support drivers, such as Plaintiff, operating under Defendant's motor carrier authority.

Defendant has a legitimate interest in protecting its contractual and business relationships with entities from which it receives business, such as J.B. Hunt Transport, Inc., FedEx Corporation, and HUB Group, Inc. Time and time again, Plaintiff has revealed its intent to interrupt these relationships, or cause unnecessary hardship to Defendant, and appears comfortable with its design to do so, under the pretext of the discovery tools. Accordingly, the Court must not allow Plaintiff to reissue the previously-quashed subpoenas as a means of circumventing the discovery process.

## IV. CONCLUSION

WHEREFORE, Defendant, DMK Express Inc., prays that this Court deny Plaintiff's Motion to Compel, deny Plaintiff's request to re-issue subpoenas for records to J.B. Hunt Transport, Fed Ex Corporation, Hub Group, Inc., Swift Intermodal Transportation, and Logistics Insight Corporation, and further requests any additional or alternative relief deemed just and proper under the circumstances.

                  Respectfully submitted,
                  DMK EXPRESS, INC.,

              By:  */s/ Jason Orleans*
                  One of Its Attorneys

Jason Orleans (jorleans@ocnlaw.com)
Orleans Canty Novy LLC
65 East Wacker Place, Suite 1220
Chicago, IL 60601
T: (847) 625-8200
F: (847) 325-8262
Service@ocnlaw.com